JOHN HEATH, Respondent, *vs.* HIRAM HALL, Appellant.

APPEAL FROM THE DISTRICT COURT OF MEEKER COUNTY.

Section 32, page 592 of the Compiled Statutes, which requires that a copy of the notice of any mortgage sale, shall be served on the person in possession of the mortgaged premises, whenever such notice is published in a county other than that where the premises are situated, is not in conflict with, or in contravention of the provisions of chapter 75, Compiled Statutes, relating to the ''Foreclosure of Mortgages by Advertisement.''

A sale made without serving a copy of the notice, as required by said section, is void for irregularity.

## Points and Authorities of Appellant.

I.—The only feature of the foreclosure claimed to be irregular, is the omission to serve upon the Plaintiff occupying the mortgaged premises, a copy of the notice of foreclosure sale, as required by *sec. 33, chap. 63, Comp. Stats., p.* 592. This omission is the sole ground upon which this action is brought to vacate and declare void the sale.

II.—It is conceded on the part of the Appellant, that no such copy of the notice was served; but it is claimed by him that such service of such copy of notice is not essential to the validity of foreclosure by advertisement, because,—

III.—It is provided by *sec. 1, chap. 75, p.* 643, *Comp. Stat.,* that " every mortgage of real estate containing therein a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement in the cases and *in the manner hereinafter specified.*" If this means anything, it means that a foreclosure under such a mortgage shall be good if made "in (any of) the cases, and in the manner *hereinafter,* (that is, *chap.* 75,) specified." The only notice in said chapter "specified" to be given, is by publication for six weeks in the proper newspaper.

IV.—If the service of " a copy of such notice " as prescribed in said *sec.* 33 *of chap.* 63, be held imperative, and not merely directory, in such sense that without such service

a foreclosure cannot be valid, it is certainly *in conflict* with *sec.* 1 *of chap.* 75, which says that a foreclosure shall be good if made "*in the manner hereinafter specified*;" such .service of the notice not being thereinafter "specified."

V.—These two provisions being thus in conflict, that in *section* 1, *chap.* 75, must prevail, being found in a chapter whose subject matter is "foreclosure of mortgages by advertisement," while the subject-matter of *chap.* 63 is "fees;" and it is provided in *sec.* 12, *chap.* 3, *p.* 117, *Comp. Stat.*, that "if the provisions of different chapters of the Revised Statutes conflict with, or contravene each other, the provisions of each chapter shall prevail as to all matters and questions growing out of the subject-matter of such chapter."

VI.—The provisions of the two sections cited (*sec.* 33, *p.* 592, and *sec.* 1, *p.* 643,) can only be held not to be in conflict, by holding the former not to be *imperative*, but merely *directory;* thus not holding compliance with it *essential* to a valid foreclosure. In such case the complaint must still be deemed to set forth no cause of action, and the demurrer should have been sustained; for it is not claimed that there is any other defect in the foreclosure, by reason of which the sale thereunder ought to be set aside and declared void.

VII.—As therefore the complaint claims no other cause of action than that the foreclosure in question is claimed to be invalid by reason of the neglect to serve a copy of the notice of foreclosure sale upon the occupant of the mortgaged premises, and as such service is not in any case *essential* to a valid foreclosure, the demurrer was well taken, and the decision of the Court below must be reversed.

Points and Authorities for Respondents.

I.—The complaint was sufficient; the foreclosure was clearly bad and the demurrer properly overruled, because the failure to serve the notice of sale personally on the mortgagor resident on the mortgaged premises (the publication being in another county,) rendered the sale void. *Pub. Stat., p.* 592, *sec.* 32; *Van Slyke v. Shelden & Harper, 9 Barb.*, 278, 284; *Crary's Special Proceedings, pp.* 64, 67, 77; 11 *Barb.*,

191; 13 *Barb.*, 137; 20 *Barb.*, 18; 17 *Barb.*, 100; 10 *How. P. R.*, 51; *Bloom vs. Burdick*, 1 *Hill*, 139 *to* 143; 4 *Hill.*, 76.

II.—The complaint alleges that the publication was had, not in Meeker county where the mortgaged premises are, but in the *Glencoe Register*, a paper printed in Glencoe, McLeod county, and Defendant should have shown by answer, that the publication was had in the nearest paper, (which is untrue as a fact, the Wright County paper being nearer.) *Pub. Stat.*, *p.* 644, *sec.* 4.

III.—The only point made by Appellants, that *Pub. Stat.*, *p.* 592, *sec.* 32 conflicts with *Pub. Stat.*, *p.* 643, *chap.* 75, so as to be affected by *Pub. Stat.*, *p.* 117, *sec.* 19, is erroneous.

1. *Section* 1 *chapter* 75 is an affirmative statute, and has no negative words to take away even the common law, much less an existing statute. *Jackson vs. Bradt*, 2 *Caine's R.*, 169; *Smith's Commentaries on Statutory Construction*, *p.* 879-80, *secs.* 757-58-59.

2. Said *sec.* 32, *p.* 592, *Pub. Stat.*, simply refers to a class of cases unprovided for by *chap.* 75, prescribes a more effective notice, and for the mortgagor additional and not conflicting duties to effect foreclosure in those cases. *See decision of court below.*

IV.—Said *sec.* 32, *p.* 592, *Pub. Stat.*, is merely additional to *chap.* 75, and being in *pari materia*, they should be construed together. The last clause of said section 32 evidently refers to chapter 75 as an existing or contemplated law. *See decision of court below*; *Smith's Coms. on Statutory and Constitutional Construction*, *chap.* 14, *pp.* 751 *to* 770, *sec.* 636 *to* 659 *inclusive*; *United Society vs. Eagle Bank*, 7 *Conn. R.*, 469; *Church vs. Crocker*, 3 *Mass.*, 21; *Ibid.*, 296; 1 *Pick.*, 248, 254; 10 *Ibid.*, 235; 1 *Burrows*, 447; *Doug. R.*, 27; 1 *Kent.*, 463.

2. *Chap.* 75 *and sec.* 32 *of p.* 592, *Pub. Stat.*, were enacted by the same Legislature and at the same time, and should receive a construction so as to give effect to each. *Smith's Commentaries, above cited, p.* 755, *sec.* 641; *State vs. Rockley*, 2 *Black. R.*, 249; *Capen vs. Glover*, 4 *Mass.*, 305; 5 *Mass.*, 380.

3. Said statutes being dictated by the same policy, and hav-

vol vii.—41

ing in view the same ends, should be construed as parts of the same act. *Smith's Commentaries, above cited, p.* 757, *sec.* 642; *Stradling vs. Morgan, Plow.,* 206.

Hearing that *Pub. Stat., p.* 117, *sec.* 19, has lately received a judicial construction in an unreported case in this Court, I call the attention of the Court to that case in deciding upon the alleged conflict between *chapter* 75 *and said section* 32, *Public Statutes.*

GEO. A. NOURSE, Counsel for Appellant.

EDWARD HARTLEY, Counsel for Respondent.

*By the Court*—EMMETT, C. J.—This action was brought to set aside a sale of real estate made in pursuance of a power contained in a mortgage. The Plaintiff is the grantee of the mortgagor, and as such was resident upon and in the occupancy of the mortgaged premises, at the time of the publication of the notice of sale as hereinafter mentioned. The Defendant is the assignee of the mortgage, and the purchaser at the sale.

As there was no newspaper published in the county where the premises sold were situated, the notice of the intended sale was published in a newspaper printed in an adjoining county, as directed by the statute. The Plaintiff however was not served with a copy of said notice, as required by *section* (32) *p.* 592 *of the Comp. Stats.*, and he therefore claims that the sale is void for this omission.

On the other hand, the Defendant insists that said section is in direct conflict with the provisions of *chap.* 75 *of the Comp. Stats.*, which are specially directed to the subject of "Foreclosure of Mortgages by Advertisement;" and therefore that the provisions of the latter must prevail, under the rule of interpretation found in *section* (19) *chap.* 3, *Comp. Stat.*

The rule referred to is in the language following :

"If the provisions of different chapters of the Revised Statutes [1851] conflict with or controvene each other, the provisions of each chapter shall prevail, as to all matters and questions growing out of the subject matter of such chapter."

This is merely a legislative indorsement of a rule laid down and long acted upon by the Courts of England and America, and which doubtless suggests the proper solution where conflicts occur between the provisions of different chapters, but we must be allowed to say that its authority as a rule, stands upon its judicial, rather than its legislative indorsements. We do not think however that it can serve the Defendant in this case, because, in our opinion the different provisions of the statute alluded to, are not in conflict, in the sense contemplated by the rule.

They certainly do not conflict in the ordinary sense of the term, because they might all have been placed in one chapter, without the slightest clashing or inconsistency. The section which provides for publishing the notice of the sale in a newspaper printed in an adjoining county, is entirely consistent with the one requiring a copy of such notice to be served in such cases upon the party in possession of the premises.

But, says the Defendant, there is an inconsistency in this: that the first section of said chapter 75 declares that every such mortgage may be foreclosed "in the manner *hereinafter* specified," which is equivalent to a declaration that if the provisions of that chapter alone be complied with, the sale or foreclosure shall be valid, whereas if anything more shall be required, it is in direct conflict with this declaration.

This, we think, is too rigid a construction of the rule above referred to. We cannot give it this application without assuming that whatever rules and regulations the Legislature desire to prescribe, with reference to such sales, they must, in order to merit observance, all be given in the chapter devoted to that particular subject. This would be tying that body down rather too closely. It is inconvenient, and perhaps annoying, that the rules to be observed, are not all to be found in the chapter where we would naturally seek for them ; parties may even be misled thereby to their prejudice. But so long as the legislature may arrange the laws, as to them may seem best, we must rest content, though the arrangement may not be such as we desire. They certainly had the power to scatter these provisions through half a dozen different chapters or acts, and unless they are inconsistent, one with another, we must consider all as binding.

Nor do we think that the necessary interpretation of the first section of chapter 75 is that nothing more need be observed than what is subsequently pointed out in that chapter. It is true that it may be so read, but it may also be interpreted, as simply declaring that the requisites thereinafter enumerated shall be observed without however excluding the existence of additional requisites elsewhere. The provisions of said section (32) of chapter 63, are of equal importance with those of said chapter 75, and we are all presumed to know the one as well as the other. Had all these sections been included in the same chapter, the Defendant would have been held to a strict observance of the particular section which he now seeks to avoid; and it would have been no excuse for the omission that a subsequent section declares that such mortgages may be foreclosed "in the manner *hereinafter* specified," and that he had duly observed all the requisites following such declaratory section. So too if the section now objected to had been embodied in a subsequent act of the legislature. In the latter case a plea that the chapter on the particular subject of foreclosure by advertisement, gave him no inkling that a copy of the notice of sale was required to be served on the party in possession in certain cases, would not have availed the Defendant. He would have been told that he was bound to notice the law, or submit to the consequences of an omission.

Is he not equally bound to notice it as it now occurs? The great importance of the section, in view of the fact that without some such provision the property might be sold and the time for redemption expire before the only party interested received notice of the intended sale, forbids the idea that the Legislature did not intend that it should be complied with. And what is there to lead the mind to a different conclusion? Nothing, save that in a subsequent part of the same act there occurs a chapter on the subject of the "foreclosure of mortgages by advertisement" in which the Legislature did not think it necessary to repeat a section which had already been inserted under a different head. There is nothing as we have previously stated, in this subsequent chapter which is really inconsistent with the section previously enacted. Nothing in

any portion of the act evincing any direct intention on the part of the Legislature to dispense with the notice so particularly provided for; and we do not feel authorized to hold, either that the Legislature meant nothing by the section, or that an intention to dispense with such notice is necessarily implied from the mere omission to reenact it in this chapter.

We believe that the Legislature was not obliged to incorporate in the same chapter all the provisions of that act relating to such sales; and that the particular section to which our attention has been directed in this case, was passed to the end that its provisions might be complied with. And being unable to discover that it necessarily conflicts with or contravenes any of the provisions of *chapter 75 of the Comp. Stat.*, (*chap. 85 of said act,*) we hold that it is binding equally with other portions of the act.

The Defendant further insists however, that even if said section should be considered as of binding force, yet it is directory merely; and any omission to comply with its provisions should not of itself vitiate the sale, unless the Plaintiff should show affirmatively that he has been prejudiced by the omission, or that the Defendant acted fraudulently.

This position, though plausible, cannot, we think, be maintained, in view of the evils which it might give rise to 'in practice, and the decision which this Court has already made in *Dana and Brome vs. Farrington and wife*, 4 *Minn.*, 433. In that case we held, after an elaborate argument of the question, that in transferring or divesting the title of one person to real estate, and vesting it in another, by any of the statutory modes, such as tax sales, or mortgage sales under a power contained in the mortgage, it is the duty of the Courts to require a strict compliance with the requisites prescribed by law, in every essential particular; and therefore we set aside a sale made under a power, because the mortgagee, after notice had been once published, changed the day of sale therein named, from the 23d to the 25th of the same month, although it appeared that such alteration was made in good faith; and that the notice as altered was published for the requisite time after such alteration. It is true, however, that in that case it was found that the mortgagor had been misled

by the first publication, but it was distinctly held that he had a right to know when his property was to be sold under the mortgage, and the determination to hold the mortgagee to a strict observance of every statutory requisite is clearly manifested throughout the opinion.

We are unable to see why the provisions of this particular section are less worthy of observance than those of any other section relating to such sales. They are, in one sense, but an *exparte* proceeding, and if the provisions of this section are not complied with, the only party interested may never know, until it is too late, that the property has been sold, for it is by the observance of this section alone that the mortgagor or his successor in interest, or even bidders in the county where the land must be sold, are to learn of the intended sale. If the section be directory merely, it may be disregarded in every instance, and we are therefore to decide whether it must be observed in *all cases* falling within its terms, or may be omitted in *every case*. The difference in degree of the injury which the different parties may receive in such cases is very wide, for while on the part of the mortgagor, or his successor in interest, the loss may extend to nearly the whole of the property if such sales are sustained, the mortgagee, on the other hand, can only lose the costs and expenses of the sale, while he at the same time retains all the securities.

We cannot resist the conclusion that the interests of all parties will be best protected by holding the mortgagee and his successors to as strict an observance of this as of the other provisions relating to such sales, and therefore we affirm the order of the District Court overruling the Defendant's demurrer to the complaint in this case, and remand the case for judgment thereon.

FLANDRAU, J.—*Dissenting.*—It is my opinion that the *19th section of chapter 3 of the Compiled Statutes*, was enacted for the express purpose of anticipating certain difficulties, which the Legislature had good reason to suppose would arise from the hasty and illy digested manner in which the book of statutes, in which it appears and of which it forms part, was prepared and passed, and that it was intended to furnish

a rule of construction for that book alone, having reference to its arrangement by chapters and sections.   The section is as follows :

" If the provisions of different chapters of the revised statutes conflict with or contravene each other, the provisions of each chapter shall prevail as to all matters and questions growing out of the subject matter of such chapter."

It must be remembered that the Legislature, under the Territorial form of government, could only sit sixty days at any one session.   In 1851, shortly after the organization of the Territory, it became necessary that a system of statute laws should be provided for its government.   A commission was ordered to prepare the statutes, and the time of the session was extended by Congress thirty days longer, to enable the commission to report and the laws to be enacted at the same session.   The result of the labors of the committee was the Revised Statutes, a volume containing 734 pages, and professing to treat of all the subjects, civil and criminal, that are necessary to the government of a State, including a code of practice for the courts of justice, of modern invention and little understood.   To perform such a work in the time limited in an artistic manner, was of course impossible, and was never expected by the committee which undertook it.   They expressly state in the advertisement which accompanies the volume, that ". owing to the limited time the revisors had in which to accomplish the compilation and revision of the laws, it was found entirely impossible to review together the chapters they had severally prepared, previous to reporting."   They also say that " some few bills of a general nature were introduced by members of the Legislative Assembly, which were not reviewed either by the revisors or the judiciary committee, and were enacted and form a part of this volume."   They concede that the necessary result of this must be " considerable repetition " and sometimes "conflicting provisions."   In fact the advertisement shows clearly that the commissioners feared the arrangement of the subjects matter, or rather the want of arrangement in them, would produce difficulty in understanding and construing the law as a whole upon any one subject, and in consequence passed the section above quoted

to reconcile any such troubles that might arise. In other words, I think that the section means to advise the citizen that whenever he has occasion to perform any act which purports to be regulated by the statutes contained in that particular volume, he may turn to the chapter which treats of the subject, and conform his actions to the rules there laid down, and that if there are any other laws or parts of laws influencing the question, scattered promiscuously through the volume, not arranged under proper chapters relating to the same subject, or mixed with subjects of a different nature, he may utterly disregard them and treat them as repealed. How is the fact here? Chapter 85 treats " of the foreclosure of mortgages by advertisement." The party desiring to foreclose a mortgage finds out from section one, that " every mortgage of real estate containing therein a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement in the cases and in the manner hereinafter specified." He then examines the balance of the chapter, and finds complete directions for perfecting the foreclosure. He has a right to suppose that the Legislature have embodied all the requisites in this chapter, as no other chapter is found in the book on the same subject. He also has the right to suppose that if any provisions appear in other parts of the book in chapters upon dissimilar subjects, that they have been placed there by the mistake of the compilers, and are repealed by section 19 above cited. He may say, if I comply with this chapter I have done all that is required of me. If he has to look through the chapter ( · "The fees of certain officers and other persons, and general provisions relative to fees," to see if any further steps are required of him, why not examine also the chapter on murder, or for the protection of game? The one is certainly as apposite to the foreclosure of mortgages by advertisement as the other.

If the Legislature had said nothing about the construction of this book, I have no doubt that all provisions on any one subject, without reference to their relative situation and arrangement in the volume, would have been binding, and a compliance with them would have been necessary; but as they have by section 19 directed the attention to the arrange-

ment of subjects by chapters, and as it was the imperfection of the arrangement they were seeking to remedy, I think a section appearing out of its proper chapter may be treated as repealed.

I fully agree with all the reasoning of the Chief Justice as to the ordinary meaning of the words "conflicting" and "contravening," when used in statutes, and also that under the general rule the provisions in these two chapters do not conflict with or contravene each other, but I contend that the intention of the Legislature in this particular instance, was to include conflict of arrangement of subjects in the volume, as well as conflict in the provisions in the several sections or chapters. I am therefore of the opinion that it was not necessary for the mortgagee to serve the notice required by section 33 in the chapter on fees, and that the order appealed from should be reversed.

The notice required by section 33, is a very proper one in such cases, and perhaps this case may bring it to the notice of the bar, or may induce the Legislature to put it in its proper place by an amendment, but as it now stands it certainly is one of the snares that the Legislature by section 19 intended to guard against.